J-A05010-16

2016 PA Super 156

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SALIM WALLS, | |
| Appellant | No. 2222 EDA 2014 |

Appeal from the Judgment of Sentence of July 1, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CP-0003034-2014

BEFORE:  OLSON AND OTT, JJ. and STEVENS, P.J.E.*

OPINION BY OLSON, J.:                                    **FILED JULY 19, 2016**

Appellant, Salim Walls, appeals from the judgment of sentence entered on July 1, 2014.  In this case of first impression, we consider against whom retaliatory action must be taken in order for a defendant to be convicted of retaliating against a prosecutor or judicial official.  We also consider for the first time the type of "harm" required to sustain a conviction of one accused of retaliating against a prosecutor or judicial official.  After careful consideration, we hold that retaliatory action against any individual is sufficient so long as it is taken in retaliation for a lawful action taken by a prosecutor or judicial official in his or her official capacity.  We further hold that the type of harm required for retaliating against a prosecutor or judicial official is the same type of harm required for retaliating against a witness, victim, or party.  In those cases, our Supreme Court requires the infliction of distinct harm.  With these determinations in mind, we conclude that while

* Former Justice specially assigned to the Superior Court

the evidence was sufficient to prove that Appellant took retaliatory action against an individual based upon the lawful conduct of a prosecutor undertaken in his or her official capacity, the evidence was not sufficient to establish the requisite element of harm. As such, we conclude that the evidence was insufficient to convict Appellant of retaliating against a prosecutor or judicial official. We also conclude that there was insufficient evidence to convict Appellant of making terroristic threats; however, there was sufficient evidence to convict Appellant of harassment. Accordingly, we affirm in part, reverse in part, vacate in part, and remand for resentencing.

The factual background of this case is undisputed. At approximately 6:00 p.m. on September 19, 2013, Philadelphia County Assistant District Attorney Kathryn Brown ("ADA Brown") was shopping at a store located in Liberty Place Mall. At that time, she heard Appellant yell "Hey, ADA" from the store's entrance. Appellant then called ADA Brown, identified himself by name, and shouted that ADA Brown prosecuted him, and ultimately sent him to jail, for a crime he did not commit.[1]

Appellant then entered the store and threw his hat. He continued to yell that his incarceration caused his grandmother's death as he approached ADA Brown. Ultimately, Appellant got to within one foot of ADA Brown and his voice took on a more serious tone. ADA Brown stepped back and told Appellant to get away from her. Store employees and customers intervened

---

[1] Appellant was mistaken as ADA Brown never prosecuted him.

and escorted Appellant from the store. As Appellant was escorted out of the store, he shouted at ADA Brown that she caused his grandmother's death and that she should be next. During the encounter, Appellant never made physical contact with ADA Brown and she sustained no injuries resulting from her interaction with Appellant.

The procedural history of this case is as follows. Appellant was charged[2] with retaliating against a prosecutor or judicial official,[3] making terroristic threats,[4] and harassment.[5] On July 1, 2014, Appellant proceeded to a bench trial. The trial court found Appellant guilty of all three charges and immediately sentenced him to an aggregate term of 11½ to 23 months' imprisonment. This timely appeal followed.[6]

Appellant presents four issues for our review:

1. Was [] the evidence insufficient to support [A]ppellant's conviction for retaliation against a prosecutor or judicial official

---

[2] The docket reflects that Appellant was charged via criminal information on March 25, 2014. The certified record, however, does not include a criminal information. Instead, it only includes an indictment by the Grand Jury of Philadelphia filed on March 17, 2014.

[3] 18 Pa.C.S.A. § 4953.1(a).

[4] 18 Pa.C.S.A. § 2706(a)(1).

[5] 18 Pa.C.S.A. § 2709(a)(4).

[6] On October 15, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On November 3, 2014, Appellant filed his concise statement. On May 20, 2015, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Appellant's concise statement.

insofar as the Commonwealth failed to prove that [A]ppellant, by means of an unlawful act, harmed or attempted to harm [ADA Brown] in retaliation for anything [ADA Brown did] in her official capacity as a prosecutor?

2. Was [] the evidence insufficient to support grading the offense of retaliation against a prosecutor or judicial official as a second degree felony, insofar as the [A]ppellant did not use or threaten to use force, violence, or deception?

3. Was [] the evidence insufficient to support [A]ppellant's conviction for [making] terroristic threats where the Commonwealth failed to establish that [A]ppellant threatened to commit a crime of violence or had a settled intent to terrorize [ADA Brown]?

4. Was [] the evidence insufficient to support [A]ppellant's conviction for harassment where the Commonwealth failed to prove that [Appellant] communicated threatening words with the intent to harass, annoy[,]or alarm [ADA Brown]?

Appellant's Brief at 3 (internal citations omitted).

In his first issue, Appellant argues that the evidence was insufficient to convict him of retaliating against a prosecutor or judicial official. As we describe in greater detail below, there are three components of Appellant's sufficiency challenge. First, Appellant argues that the Commonwealth failed to prove that he targeted the appropriate individual as required by 18 Pa.C.S.A. § 4953.1. Second, Appellant asserts that the evidence did not demonstrate the harm contemplated by section 4953.1. Third, Appellant asserts that he did not commit an unlawful act as his conduct was a protected remonstrance under the Pennsylvania Constitution.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is

plenary." ***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015) (citation omitted). "When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, are sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most favorable to the Commonwealth[.]" ***Commonwealth v. Haney***, 131 A.3d 24, 33 (Pa. 2015) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Coleman***, 130 A.3d 38, 41 (Pa. Super. 2015) (internal quotation marks and citation omitted).

No published opinion issued by this Court or our Supreme Court sets forth the elements necessary to convict a defendant of retaliating against a prosecutor or judicial official. The Crimes Code, however, defines the offense as follows: "A person commits an offense if he harms or attempts to harm another or the tangible property of another by any unlawful act in retaliation for anything lawfully done in the official capacity of a prosecutor or judicial official." 18 Pa.C.S.A. § 4953.1(a). Thus, the crime of retaliating against a prosecutor or judicial official has three elements. The Commonwealth must prove, beyond a reasonable doubt, that the defendant: (1) acted in retaliation for the lawful actions of a prosecutor or judicial official done in his or her official capacity, (2) harmed, or attempted to

harm, any individual, or that individual's property, and (3) committed the harm, or committed the attempt to harm, via an unlawful action.

The parties agree that one element of the offense is that the defendant take some retaliatory action. The parties disagree, however, against whom that retaliatory action must be taken, what harm must be inflicted by a defendant's retaliatory action, and whether Appellant's conduct in the instant case amounted to an unlawful act. Specifically, Appellant argues that the retaliatory action must target the specific prosecutor or judicial official whose official conduct spurred the retaliatory action.[7] In other words, Appellant argues that if a defendant retaliates because of a burglary prosecution, he must retaliate against the prosecutor or judicial official involved in the prosecution or adjudication of that offense. Appellant further argues that the word "harm," as used in the statue, refers to a distinct harm. Finally, Appellant argues that his statement to ADA Brown was not a true threat, but

---

[7] This appeal challenges the sufficiency of the evidence needed to secure a conviction under section 4953.1 where the Commonwealth showed that Appellant, motivated by the official actions of one prosecutor, confronted a different prosecutor who had no involvement in the underlying case. In view of these circumstances, we refer only to the human target of Appellant's conduct. We note, however, that section 4953.1 permits prosecution where the defendant takes retaliatory action against the property of an individual instead of the individual himself or herself. Additionally, we note that the defendant need not have been the subject of prosecutorial or judicial action. For example, section 4953.1 would allow for the prosecution of an individual who retaliates against a judge for actions the judge took against the brother of the individual or for actions the individual read about in the newspaper.

was instead a protected remonstrance under Article I, Section 20 of the Pennsylvania Constitution.

The Commonwealth, on the other hand, argues that the requisite retaliatory action can be taken against any individual – not just the prosecutor or judicial official whose protected actions motivate the retaliatory action. It further argues that any type of harm is sufficient to support prosecution under section 4953.1. Specifically, the Commonwealth argues that emotional or psychological harm is sufficient to find a defendant guilty of retaliating against a prosecutor or judicial official. The Commonwealth avers that, at the very minimum, Appellant attempted to harm ADA Brown. Lastly, the Commonwealth argues that Appellant's statement was a true threat and not protected speech.

This appeal requires us to interpret section 4953.1. "When interpreting a statute, this Court is guided by the Statutory Construction Act [] of 1972, 1 Pa.C.S.A. §§ 1501–1991." *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 73 (Pa. Super. 2016). "Our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." *Egan v. Egan*, 125 A.3d 792, 795 (Pa. Super. 2015) (internal alteration and citation omitted). "[T]he best indication of the General Assembly's intent in enacting a statute may be found in its plain language[.]" *Watts v. Manheim Twp. Sch. Dist.*, 121 A.3d 964, 979 (Pa. 2015).

Appellant argues that "the plain language of the statute criminalizes an attempt to harm a prosecutor in retaliation for something that prosecutor has done, in her official capacity, to the defendant." Appellant's Brief at 19. This, however, is not what the statute says. Instead, the statute criminalizes the infliction of harm, or the attempt to inflict harm, upon "another" for actions lawfully taken by "a prosecutor or judicial official." The use of the word "another" does not limit the statute to cover only harms, or attempts to inflict harm, upon prosecutors or judicial officials, let alone those who prosecuted or presided over a case brought against a defendant. The plain meaning of "another" is "any other person." *Cf. Ocasio v. United States*, 136 S.Ct. 1423, 1441 (2016) (Sotomayor, J. dissenting) (discussing the plain meaning of "another").

Furthermore, the statute's use of the word "a" instead of "the" indicates that the harm, or attempted harm, need not be done to the specific prosecutor or judicial official whose protected actions motivated the defendant. Instead, all that is required is that a defendant retaliate against **any** individual for a lawful action taken by **any** prosecutor or judicial official in his or her official capacity. For example, if a defendant harms a prosecutor's spouse in retaliation for a lawful action taken by that prosecutor in his or her official capacity, the statutory element requiring retaliation has been satisfied. Likewise, if a defendant harms a prosecutor in Pike County in retaliation for a lawful action taken by a different prosecutor in Greene

County, the statutory element requiring retaliation has been satisfied. Thus, we hold that section 4953.1 does not require that retaliatory action be taken against the specific prosecutor or judicial official whose protected actions motivated the defendant. Instead, it is sufficient that the retaliatory action be taken against any individual in retaliation for the actions taken by any prosecutor or judicial official in his or her official capacity. In this case, Appellant retaliated against ADA Brown for actions taken by a different ADA, who prosecuted him for a crime for which he was ultimately imprisoned. Thus, the Commonwealth satisfied its burden of proof with respect to the first element of the offense.

Next, we turn to whether Appellant "harmed" ADA Brown. The Commonwealth argues that "placing [ADA Brown] in fear and causing her to seriously reassess her career as a prosecutor" was "harm" under the statute. Commonwealth's Brief at 11. Appellant, on the other hand, argues that such emotional and psychological distress is insufficient under section 4953.1.

Section 4953.1 does not define the term harm and neither this Court nor our Supreme Court has defined the harm required under section 4953.1. When interpreting another section of Chapter 43 of the Crimes Code, however, this Court held that the term "harm" is ambiguous. *Cf. Commonwealth v. Ostrosky*, 866 A.2d 423, 428 (Pa. Super. 2005), *aff'd*, 909 A.2d 1224 (Pa. 2006) ("[B]ecause of the context in which the word 'harm' is used in the retaliation statute, we question whether the legislature

intended that it include any conceivable kind of injury, loss, or damage, as described in the dictionary."). Thus, we turn to other tools of statutory construction.

As all sections of Chapter 43 of the Crimes Code bear upon falsification and intimidation, they must be read *in pari materia*. **See  Commonwealth v. Gallagher**, 924 A.2d 636, 638 (Pa. 2007) (citations omitted); 1 Pa.C.S.A. § 1932(a). Although no other section of Chapter 43 defines the term harm, our Supreme Court has defined the term under section 4953, criminalizing retaliation against a witness, victim, or party. We therefore find our Supreme Court's analysis instructive as it relates to the definition of harm under section 4953.1.

Our Supreme Court has held that the harm required under section 4953 must be distinct from the threat. In **Commonwealth v. Ostrosky**, 909 A.2d 1224 (Pa. 2006), the defendant was ordered to pay restitution in a civil case. When the defendant saw the victim in public, the defendant called him a pejorative term for homosexuals, threatened to assault him, and threated to rape his wife. **Id.** at 1226. As a result of these threats, the defendant was convicted of retaliating against a witness, victim, or party. That statute provides that, "A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done

in the capacity of witness, victim[,] or a party in a civil matter." 18 Pa.C.S.A. § 4953.

Our Supreme Court granted allowance of appeal to consider whether the evidence was sufficient to prove that the defendant harmed the victim. ***Commonwealth v. Ostrosky***, 878 A.2d 863 (Pa. 2005) (*per curiam*). The Commonwealth argued that the harm was two-fold. First, the Commonwealth argued that being the victim of any crime was sufficient harm. In the Commonwealth's view, it was sufficient for purposes of section 4953 that the defendant harassed the victim. Second, the Commonwealth argued that the psychological harm to the victim was sufficient to satisfy the harm element of the offense.

Our Supreme Court rejected both arguments. As to the first argument, it stated:

> The Commonwealth's claim that the element of harm can be satisfied merely by showing that an unlawful act was committed does violence to the plain language of the provision which requires **both** a showing of harm and the performance of an unlawful act. Such a construction would negate the need for a specific showing of harm, which is clearly contrary to language contemplated by the legislature. . . . [S]uch a construction would make the legislature's use of the word harm in the statute mere surplusage as proof of the unlawful act itself would, *per se,* be considered harmful. The legislature, however, is presumed not to intend any statutory language to exist as mere surplusage and, accordingly, courts must construe a statute so as to give effect to every word.

***Ostrosky***, 909 A.2d at 1232 (citations omitted; emphasis in original).

The same is true under section 4953.1. Section 4953.1, like section 4953, requires not only that harm be done but also that the harm be the result of an unlawful act. The harm language in section 4953.1 would be surplusage if the mere commission of an unlawful act was sufficient to satisfy the harm requirement. Thus, for the same reasons expressed by our Supreme Court in *Ostrosky*, we hold that the harm required under section 4953.1 is not satisfied by the mere showing of an unlawful act by the defendant.

Our Supreme Court also rejected the Commonwealth's second argument which asserted that psychological harm sufficed under section 4953. It explained:

> We likewise disagree with the Commonwealth's alternative claim that it independently demonstrated harm in relation to [the defendant]'s threat sufficient to sustain its burden of proof. . . . [S]uch a claim is, in essence, just another way of asserting that harm, *per se,* results from the commission of an unlawful act. The [victim] testified to feelings of concern and intimidation that resulted from [the defendant's] threat [which] are feelings that one would expect to accompany any threat that was made. Again, if such a threat and its concomitant resulting feelings were sufficient to satisfy the retaliation statute, the requirement of some objective type of harm . . . would be unnecessary.

*Ostrosky*, 909 A.2d at 1233.

This rationale refutes the Commonwealth's claim that ADA Brown's fear and reassessment of her prosecutorial career qualify as harm under section 4953.1. The statute specifically requires some objective harm separate and apart from intimidation and psychological harm that results

- 12 -

from any unlawful act. Thus, for the same reasons expressed by our Supreme Court in **Ostrosky**, we hold that the harm required under section 4953.1 is not satisfied by the mere showing of mental or psychological harm.

The Commonwealth attempts to distinguish **Ostrosky** in two respects. First, the Commonwealth notes that the witness retaliation statute specifically includes an alternative element of making repeated threats in lieu of causing harm. It also notes section 4935.1 does not include this alternative element. This argument, however, confirms our interpretation of the statute. "[A]n intrinsic aid to statutory construction is found in the maxim *expressio unius est exclusio alterius*. The maxim establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions." **Commonwealth v. Richards**, 128 A.3d 786, 789 (Pa. Super. 2015).

The General Assembly included a pattern of threats as an alternative element in section 4953 but not 4953.1. By making this choice, the legislature clearly intended to outlaw threats (so far as there is a pattern) under section 4953 but not under section 4953.1. The failure to list a pattern of threats as an alternative element under section 4953.1 means that even a pattern of threats in retaliation for actions taken by a prosecutor or judicial official is not criminalized under section 4953.1 (although it may be illegal under other sections of the Crimes Code). It is not our duty to

second guess this policy decision by the legislative branch. Instead, under the *in pari materia* and *expressio unius est exclusio alterius* cannons of statutory construction, the failure of the legislature to include a pattern of threats in section 4953.1 means that threats – unaccompanied by retaliatory action and a distinct harm - are generally not included within the scope of conduct criminalized by that section.

Second, the Commonwealth notes that section 4953.1 is satisfied when the Commonwealth proves the defendant "attempted" to harm while section 4953 requires actual harm. We agree that the plain language of section 4953.1 provides that if a defendant attempts to harm a prosecutor or judicial official, but fails, the harm element of the statute is satisfied. In other words, if the defendant shoots at an individual in retaliation for actions taken by a prosecutor but misses, he or she has "attempted" to cause the type of harm required by section 9543.1. We do not read the General Assembly's expansion of the scope of criminal liability under section 4953.1 to include "attempts" as an effort to negate the independent requirement of a distinct harm. Put differently, where criminal liability under section 4953.1 rests upon an "attempt to inflict harm," the Commonwealth must demonstrate that the defendant attempted to inflict a distinct harm – one that differs from the defendant's unlawful act.

Next, the Commonwealth argues that, if **Ostrosky** is indistinguishable from the case at bar, we should find that Appellant's threat harmed ADA

Brown as contemplated by footnote 9 of that decision. In that footnote, our Supreme Court stated, "Contrary to the dissent's assertion, this is not to say that one could never show that harm . . . resulted from a single threat. Rather, as noted, at issue here is whether, in all cases, a distinct showing in this regard is required." *Ostrosky*, 909 A.2d at 1232 n.9.

This argument is without merit. The Commonwealth failed to prove any harm which was distinct from the threat itself. As noted above, all threats cause concern and/or intimidation but such consequences are insufficient to prove distinct harms. There are certainly cases, albeit rare, in which a distinct harm results from a single threat. For example, if a woman miscarried as a result of being threatened for actions taken by a prosecutor or judicial official, she would have suffered harm under section 4953.1. In the case at bar, however, the threat resulted in no distinct harm.

Finally, the Commonwealth argues that even under our interpretation of the harm requirement, Appellant attempted to harm ADA Brown, *i.e.*, he took a substantial step towards killing ADA Brown. *Cf.* 18 Pa.C.S.A. § 901(a) (defining criminal attempt). There is no support in the record for this assertion. Appellant never took a substantial step towards harming ADA Brown. He made the relevant threat as he was backing away from ADA Brown. He did not try to approach or harm her after he made the threat. If we were to adopt the Commonwealth's argument, any threat to kill someone would also be attempted murder. Such an argument is nonsensical. Thus,

we conclude that Appellant did not take a substantial step towards harming ADA Brown.

As the Commonwealth failed to prove a distinct harm in this case, and failed to show that Appellant attempted to harm ADA Brown, we hold that the evidence was insufficient to convict Appellant of retaliating against a prosecutor or judicial official. As we conclude the evidence was insufficient to find Appellant harmed ADA Brown, we need not address Appellant's argument that he did not commit an unlawful act or his claims relating to the grading of his conviction for retaliatory conduct.

In this third issue, Appellant argues that the evidence was insufficient to sustain a conviction for terroristic threats. "The elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize[.]" *Commonwealth v. Vergilio*, 103 A.3d 831, 833 (Pa. Super. 2014), *appeal denied*, 114 A.3d 416 (Pa. 2015) (internal alterations and citation omitted). Appellant challenges the sufficiency of the evidence related to both elements.

We focus our attention on the second element. "The purpose of [section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.A. § 2706 cmt. As this Court has stated, "the

real issue [i]s whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether [Appellant] made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." **Commonwealth v. Walker**, 836 A.2d 999, 1001 (Pa. Super. 2003), *appeal denied*, 853 A.2d 361 (Pa. 2004) (internal quotation marks and citation omitted). We must consider the totality of circumstances to determine if Appellant had the necessary *mens rea*. **See Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003) (citation omitted).

When two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger. For example, in **Commonwealth v. Sullivan**, 409 A.2d 888 (Pa. Super. 1979), the defendant called the state police and threatened to kill the local sheriff. **Id.** at 888-889. The next day, the defendant encountered the local sheriff on the street, and during a shouting match, Appellant threatened to kill the sheriff. **Id.** at 889. The defendant was convicted of two counts of terroristic threats – one count for each incident. On appeal, this Court reversed and found that the evidence was insufficient to find Appellant guilty on either count. As to the second count, involving the defendant's encounter with the sheriff, this Court held that the threat was made as part of a chance argument on a public street

and that the defendant did not have the settled purpose of terrorizing the local sheriff. *See id.* at 889-890.

The Commonwealth argues *Sullivan* is distinguishable because the defendant in *Sullivan* was provoked. *See* Commonwealth's Brief at 20-21. Although there was a shouting match between the sheriff and the defendant in *Sullivan*, there is nothing to indicate that the sheriff provoked the defendant. What we find instructive about *Sullivan*, however, is that, as in the case at bar, the defendant encountered an official in public, a heated confrontation followed, and the defendant made a threat during that heated confrontation. Thus, it was the chance nature of the parties' meeting and the spontaneous anger that the encounter instilled in the defendant that links the facts in the present case to those before this Court in *Sullivan*. Just as *Sullivan* found the evidence insufficient to support a terroristic threats conviction, we do so here as well.

Contrast the present situation with *In re B.R.*, 732 A.2d 633 (Pa. Super. 1999), which the Commonwealth relies upon in arguing that the evidence was sufficient to convict Appellant of terroristic threats. In *B.R.*, the defendant, while talking with his friends outside the principal's office, threatened to spray paint the security cameras in the school and bring a gun to school. *Id.* at 635. The defendant was convicted of making terroristic threats for this statement. This Court affirmed. In holding that the defendant's statements were not spur-of-the-moment threats, this Court

stated that because the defendant's statements "were not the product of any heated verbal exchange or confrontation[,]" his statements could "not be characterized as a random spur[-]of[-]the[-]moment emotional outburst resulting from anger." *Id.* (internal quotation marks omitted).

In *B.R.*, there was no heated confrontation. Instead, the defendant made his threat while talking with friends in a conversational tone unmotivated by a hostile encounter or circumstance. In this case, Appellant's threat to ADA Brown was the product of a heated confrontation between Appellant and ADA Brown. Appellant made the threat at the conclusion of the confrontation as he was being led away from ADA Brown. The evidence shows that Appellant became enraged upon seeing the individual he (mistakenly) blamed for sending him to prison. This type of spur-of-the-moment threat, resulting from transitory anger, is not covered by the terroristic threats statute.

The Commonwealth also argues that, at the very least, Appellant acted with reckless disregard of terrorizing ADA Brown. *See* Commonwealth's Brief at 17. The Commonwealth ignores, however, that Appellant was not charged with violating section 2706(a)(3), which covers instances where a defendant acts with reckless disregard. Nor was Appellant convicted under section 2706(a)(3). Instead, Appellant was charged with, and convicted of, violating section 2706(a)(1), which requires a settled intent to terrorize. Thus, the Commonwealth's argument that Appellant violated section

2706(a)(3) is of no moment with respect to our review of the sufficiency of the evidence.[8]

Viewing the totality of the circumstances in the light most favorable to the Commonwealth, we hold that there was insufficient evidence that Appellant intended to terrorize ADA Brown. Instead, the evidence only supports the conclusion that Appellant made a spur-of-the-moment threat as the result of anger during a random confrontation at a local shopping mall. Appellant did not specifically threaten harm to ADA Brown presently or in the future. Instead, Appellant made a very brief statement that the trial court construed as a threat while being led away from ADA Brown. All of these circumstances indicate that Appellant made a spur-of-the-moment threat that does not evince a settled intent to terrorize. Thus, there was insufficient evidence to find Appellant guilty of making terroristic threats.

Finally, Appellant argues that the evidence was insufficient to convict him of harassment.[9] "A person commits the crime of harassment when, with

---

[8] We acknowledge that this Court has used imprecise language when reciting the elements of the offense. In particular, we have conflated the elements of section 2706(a)(1) with those of section 2706(a)(3). **See, e.g.**, **Vergilio**, 103 A.3d at 833 (citation omitted). This Court explained the difference, however, in **Commonwealth. v. Sinnott**, 976 A.2d 1184, 1188 (Pa. Super. 2009), *rev'd in part on other grounds*, 30 A.3d 1105 (Pa. 2011).

[9] At trial, Appellant conceded the evidence was sufficient to convict him of harassment. **See** N.T., 7/1/14, at 33-39. As we find that Appellant's sufficiency challenge lacks merit, we decline to decide whether a defendant waives a sufficiency challenge on appeal by conceding at trial that the evidence was sufficient. **Cf. Commonwealth v. Murray**, 836 A.2d 956,
*(Footnote Continued Next Page)*

intent to harass, annoy[,] or alarm another, the person . . . communicates to or about such other person any lewd, lascivious, threatening[,] or obscene words, language, drawings[,] or caricatures[.]" 18 Pa.C.S.A. § 2709(a)(4).

Appellant argues that he did not intend to harass, annoy, or alarm ADA Brown. This argument is without merit. Unless you are attempting to harass and annoy an individual, there is no reason to scream at someone that she should die. We agree that Appellant's actions are exactly the type of behavior that the harassment statute was meant to cover. Accordingly, we conclude that there was sufficient evidence to convict Appellant of harassment.

In sum, we hold that retaliatory action taken against any individual is sufficient to satisfy the first element of section 4953.1 so long as it is taken in retaliation for a prosecutor or judicial official's lawful action in the course of his or her official duties. We further hold that the harm inflicted must be distinct from the unlawful action. We therefore reverse Appellant's conviction on that count. We conclude that the evidence was insufficient to convict Appellant of making terroristic threats and therefore reverse that conviction. We conclude the evidence was sufficient to convict Appellant of harassment and therefore affirm that conviction. As our reversal of

*(Footnote Continued)* ⸻

963 (Pa. Super. 2003), *overruled on other grounds*, **Commonwealth v. Robinson**, 970 A.2d 455 (Pa. Super. 2009) (*en banc*) (challenge to sufficiency of evidence waived by pleading guilty).

Appellant's convictions for retaliatory conduct and making terroristic threats convictions upsets the overall sentencing scheme, we vacate Appellant's judgment of sentence and remand for resentencing. ***See Commonwealth v. Carter***, 122 A.3d 388, 393 (Pa. Super. 2015).

Judgment of sentence affirmed in part, reversed in part, and vacated in part. Case remanded. Jurisdiction relinquished.

Judge Ott joins this Opinion.

President Judge Emeritus Stevens files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016