J-S35003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEVIN MOSES | |
| Appellant | No. 1763 WDA 2015 |

Appeal from the Judgment of Sentence September 15, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013123-2013

BEFORE: LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 9, 2017**

Kevin Moses appeals from his judgment of sentence, entered in the Court of Common Pleas of Allegheny County, after he was convicted of terroristic threats[1] and harassment.[2] After careful review, we affirm.

Moses was charged with one count each of stalking and terroristic threats, and two counts of harassment. The charges stemmed from a telephone call placed to Moses' ex-girlfriend, Mary Kay Colemen, where the caller threatened to kill Coleman and her mother. Moses and Coleman had dated for two years; their relationship ended in 2010. After their breakup,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

[2] 18 Pa.C.S. § 2709(a)(4).

Moses married and moved to Kentucky. He returned to the Pittsburgh area in 2013.

At trial, Coleman testified that around 8:00 p.m. on the evening of July 10, 2013, she received a telephone call from an unidentified individual who stated that "he would come down to the FOR[, Coleman's workplace, and] buy a gun, [and] shoot [her] and shoot [her mother] in front of everybody there." N.T. Non-Jury Trial, 9/10/15, at 4-5. Coleman told the caller not to call her again and that she would be reporting the call to the police. *Id.* at 6. Coleman testified that she recognized the voice of the caller as Moses'. She also testified that the number that appeared on the caller identification feature on her phone was Moses' number. Because she was scared and "thought [Coleman] was going to come down and shoot [her and her mother], " Coleman lodged a complaint against Moses at the McKees Rocks Police Department the following day. *Id.* at 5, 9, 11. Coleman also testified that she received a "couple" of voicemails from Moses after the incident; she did not speak with Moses or return his calls. *Id.* at 7.

After the Commonwealth presented its case, Moses moved for a judgment of acquittal on stalking and harassment charges, with respect to Coleman's mother, which the court granted. The defense called Moses and his aunt, Mary Womack, as witnesses. Moses testified that he had been in a romantic relationship with Coleman for approximately 2½ years and that during a portion of that period he had lived with Coleman and her mother. Moses stated that after he and Coleman parted ways, he married another

woman, moved to Kentucky, and, in 2013, moved back to Pittsburgh with his wife. Moses' aunt testified that during the time her nephew dated Coleman, Coleman's mother and friends treated Moses terribly, depriving him of food and physically assaulting him. *Id.* at 23. She also testified, however, that Moses and Coleman's breakup was mutual and friendly. *Id.* at 24.

Following a one-day bench trial, held on September 10, 2015, the trial judge found Moses guilty of terroristic threats and harassment. On September 15, 2015, the court sentenced Moses to two years of probation for the terroristic threats charge and a concurrent term of one year of probation for harassment.[3] Moses filed post-sentence motions that were denied. Moses filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Moses raises the following issues for our consideration:

(1)     Should [Moses'] convictions for the crimes of Terroristic Threats [] and Harassment [] be vacated due to the insufficiency of the evidence[4] at his trial on the element of identity?

---

[3] The court also ordered that Moses "have no contact with . . . Coleman or her mother directly, indirectly, by any modern means of communication or anyone on his behalf." N.T. Sentencing, 9/15/15, at 5.

[4] When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in

*(Footnote Continued Next Page)*

(2) Should [Moses'] convictions for the crimes of Terroristic Threats and Harassment be vacated due to the insufficiency of the evidence at his trial on the elements of intent to terrorize (as must be proven in a § 2706(a)(4) Terroristic Threats prosecution) and intent to harass, annoy or alarm (as must be proven in a § 2709(a)(4) Harassment prosecution)?

(3) Should [Moses'] convictions for the crimes of Terroristic Threats and Harassment be vacated due to his violations of the statutes defining those crimes being *de minim[i]s* violations given the totality of the circumstances?

Moses first claims that the Commonwealth failed to prove his identity as the individual who threatened Coleman over the telephone. We disagree.

It is well established that "[t]he recipient of a telephone call can testify to the conversation whenever the identity of the calling party can be established by sufficient evidence, which may be circumstantial."

*(Footnote Continued)* ————————————

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011).

- 4 -

*Commonwealth v. DeRohn*, 282 A.2d 256 (Pa. 1971). Here, Coleman unequivocally testified that she recognized Moses' voice, having been in a long-term relationship with him for over two years. *See Commonwealth v. Carpenter*, 372 A.2d 806 (Pa. 1977) (identity of calling party is generally done by testimony as to witness's recognition of calling party's voice). Moreover, the phone number that registered on Coleman's caller identification feature matched that of Moses. Finally, it is of no moment that the call lasted less than 10 seconds, where the circumstantial evidence sufficiently proved that Coleman immediately recognized Moses as the individual who made the threatening phone call to Coleman.

Moses next asserts that the Commonwealth did not prove the intent element, or mens rea, of the crimes for which he was convicted. Specifically, he claims that the evidence did not establish an intent to cause terror or to harass, annoy or alarm. Appellant's Brief, at 37, 53.

A person commits the crime of terroristic threats "if the person *communicates*, either directly or indirectly, *a threat to . . . commit any crime of violence with intent to terrorize another*[.]" 18 Pa.C.S. § 2706(a)(1) (emphasis added).[5] Moreover, a person commits the crime of harassment

---

[5] We note that under 18 Pa.C.S. § 6102, murder is one of many crimes considered a "crime of violence." Moreover, under section 2706, the term "communicates" means conveys in person or by written or electronic means, *including telephone*, electronic mail, Internet, facsimile, telex and similar transmissions. 18 Pa.C.S. § 2706(e) (emphasis added).

"when, *with intent to harass, annoy or alarm another*, the person . . . communicates to or about such other person any lewd, lascivious, *threatening* or obscene *words*, *language*, drawings or caricatures[.]"  18 Pa.C.S. § 2709(a)(4)[6] (emphasis added).

The purpose of section 2706 "is to impose criminal liability on persons who make threats *which seriously impair personal security* or public convenience."  ***Commonwealth v. Walls***, 144 A.3d 926, 936 (Pa. Super. 2016) (emphasis added).  The statute is not intended to penalize mere "spur-of-the-moment threats" that result from anger.  ***Id.***, citing 18 Pa.C.S. § 2706 cmt.  Here, the caller told Coleman that he was going to come to her place of business and kill her and her mother in front of everyone. Threatening to kill Coleman and her mother was not the product of anger where Coleman had not talked to Moses in almost three years and where she had not threatened to harm him in any way.  ***Commonwealth v. Tizer***, 684 A.2d 597 (Pa. Super. 1996).  Finally, Coleman, herself, testified that Moses' voice sounded serious, that she took the threat seriously, and that she was scared by the threat.  Accordingly, we conclude that Moses' words

---

[6] Similarly, a communication under section 2709 includes the conveyance of "a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, *including telephone*, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." ***Id.*** at § 2709(f) (emphasis added).

could have no other intent but to terrorize Coleman and her mother by "seriously impair[ing] their personal security." **Walls**, **supra**.

Moreover, based on the evidence, the trial court properly concluded that the words uttered to Coleman, which she testified were said seriously and which scared her, were threatening and made with intent to harass, annoy or alarm her under section 2709. **See Commonwealth v. Miller**, 689 A.2d 238 (Pa. Super. 1997) (even though defendant's actions only caused victim to have an "uneasy feeling" and where defendant did not attempt to approach or physically harm victim, defendant's intent to cause reaction satisfied "intent to annoy, harass, or alarm" element under section 2709).

In his final issue, Moses claims that, assuming he was the individual who called Coleman, "his violations of the Terroristic Threats statute and of the Harassment statute were *de minim[i]s* given the totality of the circumstances." Appellant's Brief, at 58.

Under the Crimes Code, a *de minimis* infraction is defined as:

§ 312. *De minimis* infractions

(a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a)(1)-(3).  In **Commonwealth v. Moses**, 504 A.2d 330, 332 (Pa. Super. 1986), our Court stated, "[w]e believe the legislature enacted [section] 312 to apply to situations in which there was no harm done to either the victim or society.  Therefore, it is incumbent upon the trial court not to dismiss criminal conduct that is injurious to the victim or to society."

Here, Coleman testified that she took Moses' verbal threat to kill her and her mother seriously, was scared by his words, and went to the police station and reported the incident to the authorities the day after it occurred. Accordingly, we do not find that Moses' conduct constituted a mere *de minimis* infraction where his words were injurious to Coleman.  **Id.**; **Commonwealth v. Hartzell**, 988 A.2d 141, 144 (Pa. Super. 2009) (where defendant's harassing actions could have possibly injured victim, infractions could not be considered *de minimis*.)

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2017