J-S29025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MELVIN SPEARMAN | : | |
| | : | |
| Appellant | : | No. 1736 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 26, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0008773-2017.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MELVIN SPEARMAN | : | |
| | : | |
| Appellant | : | No. 1737 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 26, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0008782-2017.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MELVIN SPEARMAN | : | |
| | : | |
| Appellant | : | No. 1738 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 26, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0008781-2017

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                  : PENNSYLVANIA
                                                  :
                       v.                        :
                                                  :
                                                  :
MELVIN SPEARMAN                    :
                                                  :
            Appellant                     : No. 1739 EDA 2020


Appeal from the Judgment of Sentence Entered March 26, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0008802-2017.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED NOVEMBER 16, 2021**

Melvin Spearman appeals *nunc pro tunc* from the imposition of a judgment of sentence of five years of probation, after a judge convicted him of multiple counts of terroristic threats, stalking, harassment, and contempt for violating a protection from abuse order, at four docket numbers.[1]  We affirm.

The trial court summarized the relevant factual and procedural history as follows:

> On December 4, 2016, Angelique Sotelo met [Spearman], with whom she shares a child, at 5960 Broad Street in

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S.A. §§ 2701(a)(1), 2709(a)(2), 2709(a)(4), 6114(a).

Philadelphia. The purpose of the meeting was to drop off food, diapers, and wipes for her son. Ms. Sotelo was accompanied by her younger sister, Charlotte Lang, and her younger cousin, Talita Smith. When they arrived at the location, Ms. Sotelo, Ms. Lang, and Ms. Smith began placing food into the back seat of [Spearman's] car. When [Spearman] was refused a moment alone with Ms. Sotelo, he exited the car and said, "I'm gonna kill you bit**es." He then began removing the food from the back seat and throwing it on the ground. At this point, Ms. Sotelo was recording the incident on her phone. [Spearman] got back into his car and started to drive away, then exited his car again and tried to grab Ms. Sotelo's phone away from her. [Spearman] also said he was going to show up at her job. Ms. Sotelo, Ms. Lang, and Ms. Smith called out for police officers because they were next to the Thirty-Fifth Police District. When nobody responded, they went into the police station and made a report. At the time of this incident, Ms. Sotelo had a protective order against [Spearman].

On May 21, 2017, Ms. Sotelo was at Philadelphia Family Court located at 1501 Arch Street to drop off her son for a supervised visit with [Spearman]. Ms. Sotelo was accompanied by her aunt, Daphne Jackson-May. As they were walking at the intersection of Broad and Cherry Streets after the visit, [Spearman] drove by and said he was going to blow their heads off. Ms. Sotelo felt "scared" and "uneasy." A protection order remained in place at this time.

On June 4, 2017, Ms. Sotelo was again in the area of 1501 Arch Street for [Spearman] to have a supervised visit with his son. Following the visit, Ms. Sotelo, Ms. Jackson-May, and Ms. Lang were walking from Fifteenth and Arch Streets toward Fifteenth Street and JFK Boulevard. They noticed [Spearman] park his car in front of a TD Bank. Ms. Sotelo, Ms. Jackson-May, and Ms. Lang began crossing the street to Dilworth Park to take the subway home. At this point, they saw [Spearman] remove a bat from the trunk of his car and place it on the back seat. Ms. Sotelo was "[r]eally scared" because she was in a wheelchair at the time. [Spearman] then drove across four lanes of traffic and parked in front of Dilworth Park. He got out of his car and confronted Ms. Sotelo, Ms. Jackson-May, and Ms. Lang. In an attempt to instigate a fight, [Spearman] said, "[C]ome over here and let me show you what I'm working with," which Ms. Sotelo understood to be a reference to his fists. Ms. Jackson-May approached a police officer in Dilworth Park who spoke to [Spearman]. Following the

conversation, [Spearman] drove away. Ms. Sotelo's protective order against [Spearman] was in place at the time of this incident.

The final occurrence took place on July 16, 2017 at 1501 Arch Street. While Ms. Sotelo waited in line to drop off her son for a supervised visit, [Spearman] approached her and began discussing personal matters out loud. Specifically, he told Ms. Sotelo "he was still gonna run in [her] house[.]" According to Ms. Sotelo, [Spearman] previously made similar threats to "run in with … guns blazing" and to "run in and burn the house down." In either case, she believed [Spearman] was "threatening to run in [her] house and harm [her] or [her] family members." Ms. Sotelo reported this incident to police. Again, the protection order was in effect at this time.

[Spearman was charged at four separate dockets for the incidents described above. Following a non-jury trial, the trial court found Spearman guilty at CP-51-CR-0008773-2017 for terroristic threats, stalking, and harassment on December 4, 2016; at CP-51-CR-0008781-2017 for terroristic threats, stalking, harassment, and violation of an order or agreement on May 21, 2017; at CP-51-CR-0008782-2017 for stalking, harassment, and violation of an order or agreement on June 4, 2017; and at CP-51-CR-0008802-2017 for terroristic threats, stalking, harassment, and violation of an order or agreement on July 16, 2017.]

After [Spearman] was convicted of the aforementioned crimes, he waived his right to a pre-sentence investigation and was immediately sentenced to five years of probation. On April 3, 2018, the Commonwealth filed a motion to modify the sentence imposed, seeking to have [Spearman] supervised by the domestic violence unit. On April 4, 2018, [Spearman] filed a post-sentence motion challenging the weight of the evidence. On April 23, 2018, this Court denied [Spearman's] post-sentence motion and granted the Commonwealth's motion to modify the conditions of probation.

On August 31, 2018, [Spearman] filed a timely *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"). On October 17, 2018, privately retained counsel, Lauren A. Wimmer, Esq. entered her appearance. On October 28, 2018, counsel filed an amended PCRA petition seeking reinstatement of [Spearman's] direct appeal rights. Following an evidentiary hearing on February

8, 2019, [Spearman's] PCRA petition was granted, and his appellate rights were reinstated *nunc pro tunc*. On February 28, 2019, [Spearman] timely appealed to the Superior Court [by filing in each case a notice of appeal listing all four trial court docket numbers]. On March 4, 2019, [the trial c]ourt ordered [Spearman] to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) within twenty-one days. On March 29, 2019, [Spearman] filed an untimely Rule 1925(b) statement.

Trial Court Opinion, 5/23/21, at 2-4 (citations to the record omitted).

This Court consolidated the appeals *sua sponte*, but thereafter quashed the appeal as premature due to the absence of a final appealable order because the February 8, 2019 order granting *nunc pro tunc* relief was not properly entered on the trial court dockets pursuant to Pa.R.Crim.P. 114(C)(2). **See Commonwealth v. Spearman**, 229 A.3d 235 (Pa. Super. 2020) (unpublished memorandum at *4).[2] This Court directed that "[a]fter the clerk of court notes service of the orders reinstating appellate rights *nunc pro tunc* on the different dockets as required by Rule 114(C), [Spearman] will have thirty days from the date of service to timely file separate notices of appeal at each docket implicated by the orders." **Id**.

_____

[2] This Court issued a rule to show cause why the appeal should not be quashed pursuant to **Commonwealth v. Walker**, 646 Pa. 456, 185 A.3d 969 (Pa. 2018) (holding that an appeal must be quashed if an appellant fails to file separate notices of appeal at each docket number implicated by an order resolving issues that involve more than one trial court docket). Although this Court could have quashed the appeal on this basis, it found an alternative basis for quashal.

Our review discloses that, upon remand, the clerk of courts entered corrective docket entries on July 28, 2020, stating that "[t]he Docket was corrected to reflect the Oral Notice in Court on 2/08/2019." Dockets, 7/28/20. Spearman filed his notices of appeal on August 5, 2020, which was within thirty days of the date on which the clerk of courts indicated the date of oral service of the order granting reinstatement of Spearman's direct appeal rights *nunc pro tunc*.[3] Thus, Spearman's appeal is timely and we may address the merits of the issues he raises.

Spearman raises the following issues for our review:

1. Is the evidence insufficient to sustain the verdict of guilt for each of the terroristic threats convictions because the Commonwealth failed to prove beyond a reasonable doubt that [Spearman] threatened to commit a crime of violence or communicated a threat with the intent to terrorize?

2. Is the evidence insufficient to sustain the verdict of guilt for each of the stalking convictions because the Commonwealth failed to prove beyond a reasonable doubt that [Spearman] engaged in any of the behaviors proscribed by 18 Pa.C.S.[A.] § 2709.1 or that he engaged in conduct with the intent to place another person in reasonable fear of bodily injury or to cause substantial emotional distress?

Spearman's Brief at 4.

Both of Spearman's issues challenge the sufficiency of the evidence supporting his convictions. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

---

[3] Pursuant to Rule 114, oral service in open court on the record is an acceptable method of service. **See** Pa.R.Crim.P. 114(B)(3)(b).

- 6 -

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, the fact finder, "which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

In his first issue, Spearman claims that the evidence was insufficient to support his convictions for terroristic threats related to the incidents on

December 4, 2016, May 21, 2017, and July 16, 2017.[4] A person commits the crime of terroristic threats if he "communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another" or "to cause terror . . . with reckless disregard of the risk of causing such terror[.]" 18 Pa.C.S.A. § 2706(a)(1), (3). The elements necessary to establish terroristic threats are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize. *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa. Super. 2016). The purpose of § 2706 is to impose criminal liability on persons who make threats which seriously impair personal security; it is not intended to penalize mere spur-of-the-moment threats which result from anger. *See Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa. Super. 2016). The offense does not require that the actor intended to carry out the threat, only that he intended to terrorize. *Commonwealth v. Anneski*, 525 A.2d 373, 375 (Pa. Super. 1985). We consider the totality of the circumstances to determine if the actor had the necessary *mens rea*. *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003).

Spearman argues that each statement he allegedly made and was convicted for in this case was "spur-of-the-moment, a product of anger, and did not trigger reasonably foreseeable immediate or future danger."

---

[4] A terroristic threats charge related to the June 4, 2017 incident was dismissed at the preliminary hearing.

Spearman's Brief at 19. Spearman maintains that the statements were "essentially exclamations [he] either made to himself or yelled out his car window as he drove by the complainant and thus fail to rise to a level of culpability sufficient to sustain a terroristic threats conviction." *Id*.

According to Spearman, the December 4, 2016 statement, "I'm gonna kill you bitches," resulted from transitory anger prompted by Ms. Sotelo's refusal to speak to him. Spearman claims that he did not aggressively approach the three women at the time of the alleged statement nor engage in behavior that would demonstrate a settled intent to terrorize. Spearman contends that he made the statement to himself and that the statement was not communicated with the intent to terrorize.

Regarding the May 21, 2017 incident, during which Spearman drove his car past Ms. Sotelo and Ms. Jackson-May and threatened to blow their heads off, he asserts that there is no evidence that he screamed at the two women, that he exited his vehicle, or that he made the statement while wielding a firearm. Spearman maintains that the statement resulted from transitory anger prompted by family court proceedings between himself and Ms. Sotelo over their child. According to Spearman, his May 21, 2017 encounter with Ms. Sotelo was an unplanned, chance encounter and, thus, the testimony failed to establish an intent to terrorize.

With respect to the July 16, 2017 incident, Spearman contends that his vague and ambiguous statement "I'm gonna run in your house," was made in

the lobby of the courthouse while he was rambling to himself. Spearman claims that the statement was not made outside of, or in close proximity to, Ms. Sotelo's home such that it might trigger the requisite foreseeable immediate or future danger, nor was it accompanied by an action such as the pointing of a gun from which the requisite intent could be inferred.

The trial court considered Spearman's first issue and determined that it lacked merit. The court reasoned:

> Here, [Spearman] made a terroristic threat [on December 4, 2016,] when he threatened to kill Ms. Sotelo, Ms. Lang, and Ms. Smith. While Ms. Sotelo testified that [Spearman] was upset after he was refused a moment alone with her, that alone did not negate his intent to terrorize. [Spearman's] comment was not made during a heated exchange or confrontation. Rather, he deliberately exited his vehicle, made the threatening statement, and then proceeded to throw food out of the car. *See* N.T. 3/26/2018, at 10. Ms. Sotelo testified that she took [Spearman's] words seriously as he had made the same threat in the past. *Id*. Immediately after throwing food on the ground, [Spearman] returned to his car and began to drive away, but then again exited and attempted to take Ms. Sotelo's phone away from her. *Id*. at 11. He also threatened to show up at her job. *Id*. Therefore, [Spearman's] actions did not comprise "a" moment but instead involved an ongoing purpose to terrorize Ms. Sotelo.
>
> * * *
>
> [As to the May 21, 2017 incident, Spearman] deliberately drove up to Ms. Sotelo and Ms. Jackson-May as they were walking home, threatened to blow their heads off, and then sped away in his car. N.T. 3/26/2018, at 17-18. Ms. Sotelo testified that [Spearman's] words made her feel "scared" and "uneasy." *Id*. at 18. Ms. Jackson-May testified that when she and Ms. Sotelo left the courthouse, they walked on Cherry Street rather than their usual route because [Spearman] "would follow [them] from the courthouse to Market Street." *Id*. at 47-48. Based on the testimony at trial, [Spearman's] threat was not a spur-of-the-

- 10 -

moment product of a heated confrontation. Instead, it was a continuation of his efforts to terrorize Ms. Sotelo.

* * *

Th[e final terroristic threats] conviction stemmed from the July 16, 2017 incident in which [Spearman] approached Ms. Sotelo while she waited to drop off her son for a supervised visit and threatened to "run in [her] house[.]" . . . Here, although [Spearman] did not express a specific crime he intended to commit, [he] walked up to Ms. Sotelo and made a statement that was similar to previous threats to "run in with . . . guns blazing" and to "run in and burn the house down." N.T. 3/26/2018, at 26. Based on these previous statements, Ms. Sotelo testified that she believed [Spearman] was "threatening to run in [her] house and harm [her] or [her] family members." *Id*. Ms. Sotelo also testified that she took [Spearman's] threats seriously and they caused her fear. *Id*. This evidence was sufficient to sustain [Spearman's] terroristic threats conviction.

Trial Court Opinion, 5/23/21, at 6-12.

Viewing the evidence in the light most favorable to the Commonwealth, as we must, we discern no abuse of discretion by the trial court in finding that the evidence was sufficient to support Spearman's convictions for terroristic threats. The court was presented with ample evidence of continued threats of violence communicated over seven-month period with the intent to terrorize Ms. Sotelo. While Spearman attempts to minimize his actions as merely "spur-of-the-moment" and "transitory anger," the trial court concluded otherwise. Whether Spearman intended to follow through with his threats is irrelevant as the intent element of terroristic threats pertains to causing fear in the mind of the recipient of the threats. Accordingly, Spearman's sufficiency challenge to his convictions for terroristic threats merits no relief.

In his second issue, Spearman contends that the evidence was insufficient to support his convictions for stalking. A person is guilty of the crime of stalking when the person either:

(1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or

(2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1(a) (effective until 8/4/20). Section 2709.1(f) defines "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously." 18 Pa.C.S.A. § 2709.1(f) (effective until 8/4/20). "Emotional distress" is defined as "[a] temporary or permanent state of mental anguish." *Id*.

Spearman argues that the testimony shows that his December 4, 2016 statement that "I'm gonna kill you bitches" was made hastily and out of anger after Ms. Sotelo refused to speak to him outside of the presence of the other two women. Spearman claims that he did not aggressively approach the women, raise his tone, or act in any matter which would establish an intent to place Ms. Sotelo in reasonable fear of bodily injury or to cause substantial

emotional distress. Spearman further claims that his statement, in and of itself, does not establish that he engaged in a course of conduct or repeatedly communicated under circumstances which demonstrate either an intent to place Ms. Sotelo in reasonable fear of bodily injury or to cause substantial emotional distress to her.

Spearman argues that the circumstances under which he made the May 21, 2017 statement that "I'm gonna blow your heads off," fails to demonstrate an intent to place Ms. Sotelo in reasonable fear of bodily injury or to cause substantial emotional distress. Spearman asserts that the statement was made as he drove by and observed Ms. Sotelo walking after court. According to Spearman, this was a chance encounter and his decision to yell to her out the vehicle window was spontaneous as he continued to drive past them without stopping to engage.

Spearman next argues that both the June 4, 2017 statement to "come over here and let me show you what I'm working with" and the July 16, 2017 statement that "I'm gonna run in your house" fail to establish the requisite intent to sustain a conviction for stalking. According to Spearman, the June 4, 2017 statement is not violent, obscene, lewd, or threatening, and the July 16, 2017 statement was made in the lobby of a courthouse. Spearman contends that the circumstances in which both comments were made show that he was angry with Ms. Sotelo but fail to demonstrate that he had the intent to cause her substantial emotional distress.

The trial court considered Spearman's second issue and determined that it lacked merit. The court reasoned:

> The evidence presented at trial established that, from December 4, 2016[,] until July 16, 2017, [Spearman] engaged in a course of conduct that he directed at Ms. Sotelo and that was intended to place Ms. Sotelo in reasonable fear of bodily injury and to cause her substantial emotional distress. [Spearman's] first act in this series of events occurred on December 4, 2016, when [Spearman] threatened to kill Ms. Sotelo, Ms. Lang, and Ms. Smith. It was at this time that [Spearman] also tried to grab Ms. Sotelo's phone away from her and told her he was going to show up at her job. N.T. 3/26/2018, at 10-11. Ms. Sotelo testified that [Spearman's] threat to kill her "didn't make [her] feel good" and that she was afraid of him. *Id*. at 10. Ms. Sotelo further testified that she was scared when [Spearman] said he would show up at her job because he had done so before. *Id*. at 11-12. This first incident, part of [Spearman's] course of conduct toward Ms. Sotelo, constituted a stalking in and of itself. . . .
>
> * * *
>
> The incident on May 21, 2017, in which [Spearman] drove up to Ms. Sotelo and Ms. Jackson-May and threatened to blow their heads off, is one act of stalking constituting [Spearman's] course of conduct
>
> * * *
>
> The evidence presented by the Commonwealth was sufficient to prove that [Spearman] intended to place Ms. Sotelo in reasonable fear of bodily injury or to cause substantial emotional distress [on June 4, 2017]. Following a supervised visit [on that date], Ms. Sotelo, Ms. Jackson-May and Ms. Lang were making their way toward Dilworth Park to return home on the subway. N.T. 3/26/2018, at 20-21. At this time, [Spearman] removed a bat from the trunk of his car and placed it on the back seat. *Id*. at 21. When asked how this made her feel, Ms. Sotelo responded, "[r]eally scared. At the time I had just had surgery. I was in a wheelchair. So I was really upset. I just wanted to go home." *Id*. at 22. [Spearman] then went out of his way to make contact with Ms. Sotelo by driving across four lanes of traffic. *Id*. at 21-22. He confronted Ms. Sotelo, Ms. Jackson-May, and Ms.

Lang, and attempted to draw them into a fight by stating, "come over here and let me show you what I'm working with." *Id*. at 22-23. Ms. Sotelo testified that she believed [Spearman's] words were a reference to his fists. *Id*. at 23. This incident constituted another incident in an established course of conduct, which evidenced [Spearman's] continued intent to cause Ms. Sotelo substantial emotional distress or place her in reasonable fear of bodily injury.

* * *

[Spearman] clearly wanted to cause Ms. Sotelo substantial emotional distress when he threatened to "run in [her] house[.]" This is especially so given that a protection order was in place at the time. N.T. 3/26/2018, at 29. Moreover, [Spearman] previously threatened to "run in with . . . guns blazing" and to "run in and burn the house down." *Id*[.] at 26. Ms. Sotelo testified that [Spearman's] statement "caused her fear." *Id*. Accordingly, the evidence was sufficient to sustain [Spearman's] stalking conviction.

Trial Court Opinion, 5/23/21, at 7-13.

Viewing the evidence in the light most favorable to the Commonwealth, we discern no abuse of discretion by the trial court in finding that the evidence was sufficient to support Spearman's convictions for stalking. The court was presented with ample evidence of continued threats of harm communicated by Spearman to Ms. Sotelo over a seven-month period. Drawing all reasonable inferences in favor of the Commonwealth, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that Spearman engaged in a course of conduct which demonstrated either an intent to place Ms. Sotelo in reasonable fear of bodily injury or to cause her substantial emotional distress. For this reason, Spearman's second issue warrants no relief.

Having found no merit to either of Spearman's issues on appeal, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021