J-S03035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :           PENNSYLVANIA
                                           :
              v.                         :
                                           :
                                           :
TOUISSANT MALIK ANDERSON, JR. : 
                                           :
               Appellant             :     No. 1146 WDA 2019

Appeal from the Judgment of Sentence Entered June 28, 2019
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000835-2018

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED FEBRUARY 20, 2020**

Touissant Malik Anderson, Jr. (Anderson) appeals from the June 28, 2019 judgment of sentence imposed by the Court of Common Pleas of Crawford County (trial court) following his conviction by jury of one count of terroristic threats. After careful review, we affirm.

**I.**

We glean the following facts from the certified record. At approximately 3:00 a.m. on August 12, 2018, Meadville police responded to a report of a disturbance outside of a local bar. The caller reported that an intoxicated male was banging on the window to the bar and gesturing and yelling at the

---

[*] Retired Senior Judge assigned to the Superior Court.

employees inside. Officers Eli Provost, Greg Summerson and Ryan Adamaszek responded to the scene and encountered Anderson.

Anderson was intoxicated and appeared agitated and aggravated when approached by the officers. He began yelling and cursing at the officers and told Officer Provost that he wanted to smack him in the face. As a result, Officer Adamaszek placed him under arrest for public drunkenness. The officers had some difficulty placing Anderson in handcuffs and putting him in the back of the police car, but Officer Adamaszek was eventually able to detain him for transport back to the police station. At that time, Officers Provost and Summerson left the scene to respond to another call.

Moments later, Officers Provost and Summerson were directed to return to the police station and assist Officer Adamaszek in putting Anderson in a holding cell, as Anderson was acting belligerent and aggressive. The officers removed Anderson from the cruiser and partially carried him to a holding cell while he continued to yell. Anderson was agitated and repeatedly accused the officers of harassing him. At one point, he said to Officer Provost, "I know your bitch ass lives by Allegheny College. I will see you soon." Notes of Testimony, Jury Trial, 5/6/19, at 58. Officers Provost, Summerson and Adamaszek testified at trial to hearing Anderson make this statement. *Id.*; Notes of Testimony, Jury Trial, 5/7/19, at 47-48, 80, 83. Officer Provost further testified that he does, in fact, live near Allegheny College with his wife

and child, and Anderson's statement caused him to be concerned about his family's safety. Notes of Testimony, Jury Trial, 5/7/19, at 7, 9.

Anderson continued to yell for several minutes while in the holding cell and began removing his clothes and shaking the cell doors so the officers elected to transport him to the Crawford County Jail. While Officers Provost and Summerson were walking Anderson to the police cruiser for transport, Anderson said to Officer Provost, "I will find you and I will kill you." *Id.* at 8. Officer Summerson testified that while they were bringing Anderson back to the cruiser, he made threats against Officer Provost and his family. *Id.* at 50, 55. Officer Adamaszek then transported Anderson to the jail.

At trial, Anderson denied that he made any threats of violence toward Officer Provost or his family or that he made any statements about knowing where Officer Provost lives. He testified that he had been harassed by police officers in the past, including Officer Provost. He admitted that he had been yelling and cursing at the officers throughout the incident, but contended that he did not make any threats.

The jury convicted Anderson of one count of terroristic threats for the statements he made to Officer Provost.[1] Anderson timely filed a notice of appeal. He and the trial court have complied with Pa.R.A.P. 1925.

_____

[1] 18 Pa.C.S. § 2706(a)(1). The jury found Anderson not guilty of terroristic threats for statements he allegedly made to Officer Adamaszek while being transported to the Crawford County Jail. In addition, the trial court, sitting as

**II.**

Anderson challenges the sufficiency of the evidence to sustain his conviction for terroristic threats.[2]  He first argues that his statements did not constitute a threat to commit any crime of violence.  In addition, he contends that the Commonwealth failed to prove that he made the statements with the intent to terrorize, but rather that the interaction was a mere "spur-of-the-moment" heated exchange.  We address each argument in turn.

_____

fact-finder, convicted Anderson of one summary count of public drunkenness. 18 Pa.C.S. § 5505.

[2] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**_Commonwealth v. Lopez_**, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

**A.**

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another."  18 Pa.C.S. § 2706(a)(1). "[N]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." **Interest of J.J.M.**, 219 A.3d 174, 179 (Pa. Super. 2019) (internal quotations & citation omitted).  It is beyond cavil that murder would constitute a "crime of violence" for the purposes of the terroristic threats statute.  **See, e.g.**, **Commonwealth v. Ferrer**, 423 A.2d 423, 424 & n.3 (Pa. Super. 1980). Moreover, "[i]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." **Commonwealth v. Jackson**, 215 A.3d 972, 981 (Pa. Super. 2019) (internal quotations & citation omitted).

Anderson first claims that there was no evidence that he uttered a threat to commit a "crime of violence" under the statute.  He contends that the officers' testimony that Anderson told Officer Provost, "I know your bitch ass lives by Allegheny College," is insufficient to establish that he was threatening to commit a crime of violence.  However, Officer Provost testified further that Anderson specifically stated, "I will find you and I will kill you."  Notes of

- 5 -

Testimony, Jury Trial, 5/7/19, at 8. While Anderson contended at trial that he never made such a statement, in evaluating the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as the verdict winner. **See Lopez, supra.** A threat to kill another individual constitutes a threat to commit a crime of violence, **Ferrer, supra**, and, as such, Anderson's first argument is meritless.

**B.**

Next, Anderson contends that his statements were made out of a spur-of-the-moment transitory anger and he did not possess any intent to terrorize Officer Provost. To sustain a conviction for terroristic threats, the Commonwealth must prove that the defendant communicated the threat "with the intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). While the statute "is not meant to penalize mere spur-of-the-moment threats which result from anger," such anger does not necessarily render a person incapable of forming the intent to terrorize. **Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa. Super. 2003) (internal quotations & citation omitted). "When two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." **Commonwealth v. Walls**, 144 A.3d 926, 937 (Pa. Super. 2016). On appeal, we examine the totality of the circumstances to determine whether statements were made out of transitory anger. **Reynolds, supra.**

In **Commonwealth v. Kidd**, 442 A.2d 826 (Pa. Super. 1982), this court vacated the defendant's terroristic threats conviction on the basis that his statements were made out of mere transitory anger and without intent to terrorize.  There, the defendant was arrested for public drunkenness and was agitated and belligerent during his arrest.  **Id.** at 827.  While being transported and treated at the hospital, the defendant continuously yelled obscenities at the police officers and "told the police he was going to kill them, machine gun them, if given a chance."  **Id.**  We concluded that there was no evidence of a settled intent to terrorize the officers, and the record showed only that the defendant was inebriated and expressing transitory anger that the terroristic threats statute was not intended to criminalize.  **Id.**; **compare Commonwealth v. Tizer**, 684 A.2d 597, 600-01 (Pa. Super. 1996) (finding that threats were not made in a spur-of-the-moment anger when victim did not threaten or provoke the defendant, the defendant initiated the interaction, and threats were not made during the course of a heated argument).

Here, Anderson was arrested for public drunkenness and became angry and belligerent at the scene of arrest, stating that he wanted to slap Officer Provost.  He first stated that he knew where Officer Provost lived while he was waiting in the holding cell at the police station.  Notes of Testimony, Jury Trial, 5/6/19, at 58.  After time had passed, he made at least one additional comment communicating a specific threat of violence:  "I will find you and I will kill you."  Notes of Testimony, Jury Trial, 5/7/19, at 8.  This specific threat

of violence was not made in a spur-of-the-moment fashion during his arrest. It was directed at Officer Provost and was made after Anderson assured Officer Provost multiple times that he knew where he and his family lived. Time had passed during which Anderson could cool down from his initial upset following his arrest. Moreover, the statement was not in response to any provocation by Officer Provost or his colleagues, and Officer Provost testified that he did not respond to any of Anderson's threats while he transported him to the vehicle. *Id.*

Further, Anderson's history with the arresting officers, and Officer Provost in particular, supports the conclusion that he uttered the threat with the intent to terrorize. *See Reynolds, supra* (analyzing the sufficiency of the evidence to sustain a terroristic threats conviction under the totality of the circumstances). Notably, in *Kidd*, there was no evidence that the defendant had a particular history with any of the officers who arrested him or that his statements were motivated by anything other than transitory anger and inebriation. Here, Officer Provost testified that he had interacted with Anderson on at least four prior occasions, including one prior arrest, and that he tries not to interact with Anderson while on patrol because of his previous experiences with him. *Id.* at 12, 22-23. Officer Provost, in fact, asked Officer Summerson to initiate contact with Anderson in this case due to his own history with Anderson. *Id.* at 23.

Anderson corroborated this testimony, stating that he had interacted with Officer Provost four to six times in the past and that Officer Provost was biased against him and harassed him. *Id.* at 113-14, 122, 132. Anderson testified that he does not like Officer Provost because he "do[esn't] believe he is a good cop." *Id.* at 132. This testimony suggests that Anderson harbored a grudge against Officer Provost and Officer Provost in turn avoided interacting with Anderson when possible. Further, Anderson's statement that Officer Provost lives near Allegheny College was, in fact, accurate, and the implication of this statement and his subsequent specific threat of violence was more personalized than the drunken utterances at issue in *Kidd*. The jury was free to view this history as strong circumstantial evidence that Anderson uttered the threat with the intent to terrorize Officer Provost. Viewing the evidence in the light most favorable to the Commonwealth, as we must, the testimony adduced at trial was sufficient to prove that Anderson spoke with the intent to terrorize Officer Provost.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2020

- 9 -