J-A14037-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
SCOTT RICHARD MANG :
:
Appellant : No. 1651 WDA 2019

Appeal from the Judgment of Sentence Entered October 29, 2019
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003446-2019

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED SEPTEMBER 10, 2020

Scott Richard Mang ("Mang") appeals from the judgment of sentence

imposed following his conviction of terroristic threats and simple assault –

physical menace.[1] We affirm.

In its Opinion, the trial court summarized the relevant factual history as

follows:

> [Mang] is a Pennsylvania State Police Trooper. [Mang] and
> Mrs. Mang were watching a football game in their house on the
> evening of January 21, 2019. Over the course of the evening,
> [Mang] and Mrs. Mang each consumed approximately three to four
> alcoholic drinks and three to four shots of alcohol. [Mang] and
> Mrs. Mang stopped consuming alcohol at approximately 12:00
> a.m. or 12:30 a.m. At approximately 1:00 a.m., Mrs. Mang began
> berating [Mang] and putting [Mang] down for taking too long in
> the bathroom located in the couple's bedroom. [Mang] initially
> ignored Mrs. Mang's comments, but the situation eventually
> evolved into an argument between [Mang] and Mrs. Mang. The
> argument, which lasted for approximately one or two hours, took

_____

[1] See 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(3).

place in the bathroom, bedroom, and living room of the house. The argument involved [Mang] and Mrs. Mang yelling insults at one another. Eventually, [Mang] punched the bathroom door several times, causing damage to the doorframe and several holes in the door itself. [Mang] and Mrs. Mang stopped arguing at some point, but reignited the argument shortly thereafter. The argument culminated in Mrs. Mang threatening to call the police unless [Mang] calmed down. [Mang] became angry at this assertion, and continued to yell at Mrs. Mang. It was during this exchange that [Mang] produced a loaded firearm[,] which Mrs. Mang keeps in her nightstand. Initially, [Mang] threatened to kill himself with the gun. [Mang], while holding the weapon, then threatened Mrs. Mang by stating that both Mrs. Mang and himself would "be dead." [Mang] did not make any motions with the gun after producing it.

Mrs. Mang left the house quickly after [Mang] issued his threat. It was cold on the night in question, and Mrs. Mang left the house without putting on shoes. Mrs. Mang ran to the home of Frank L. Lithgow [("Mr. Lithgow")], her neighbor, and knocked repeatedly on the door while yelling for help sometime around 2:00 a.m. Mrs. Mang was crying and visibly upset when Mr. Lithgow answered the door, and at that time she reiterated her pleas for help and said[,] "He has a gun. He's going to kill me."[FN] Mrs. Mang then entered Mr. Lithgow's home and used his phone to call 911. The police arrived shortly thereafter. Officer Raymond Luther [("Officer Luther")], a police officer with the Plum Borough Police Department, arrived on the scene at 2:11 a.m. Upon entering [Mang's] house, Officer Luther placed [Mang] into custody without further incident. ...

---

[FN] The [c]ourt overruled [Mang's] hearsay objection to the introduction of Mrs. Mang's statement on the basis of the excited utterance exception.

---

Trial Court Opinion, 12/12/19, at 2-3 (footnote in original).

Mang was arrested and charged with aggravated assault, terroristic threats, unlawful restraint, simple assault, recklessly endangering another person, false imprisonment, and harassment. On July 19, 2019, Mang filed a

Petition for Writ of Habeas Corpus, asserting that the Commonwealth had not established a prima facie case of aggravated assault or simple assault at the preliminary hearing. The trial court subsequently dismissed the aggravated assault charge. The matter proceeded to a bench trial on October 7, 2019. After the close of testimony, the Commonwealth conceded that it had not proven unlawful restraint or false imprisonment. The trial court deferred entry of the verdict, and permitted the parties to file briefs, specifically addressing the terroristic threats and simple assault charges.

On October 8, 2019, Mang filed a Post-Trial Brief, arguing that the Commonwealth presented insufficient evidence to support the terroristic threats and simple assault charges, because Mang acted out of a "transitory anger." The Commonwealth filed a Post-Trial Brief in Support of Guilty Verdict.

On October 15, 2019, the trial court found Mang guilty of terroristic threats and simple assault – physical menace, and not guilty of unlawful restraint, recklessly endangering another person, false imprisonment, and harassment. The trial court conducted a sentencing hearing on October 29, 2019, after which the trial court sentenced Mang to a term of 18 months' probation. The trial court also directed Mang to undergo a mental health evaluation and to comply with recommended treatment, including the

Batterers' Intervention Program, and prohibited violent contact with Mrs. Mang.[2]

Mang filed a Post-Sentence Motion on November 4, 2019, challenging the convictions as against the sufficiency and weight of the evidence. The trial court denied Mang's Post-Sentence Motion. Mang subsequently filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Mang raises the following questions for our review:

I. Whether the trial court erred in finding [Mang] guilty as to the charge of terroristic threats when [Mang] acted out of a transitory state of anger[,] and not with the requisite intent to terrorize his wife?

II. Whether the trial court erred in finding [Mang] guilty as to the charge of simple assault when [Mang] acted out of a transitory state of anger[,] and not with the requisite intent to put his wife in fear of imminent serious bodily injury?

III. Whether the verdicts were against the weight of the evidence?

Brief for Appellant at 4.

In his first claim, Mang argues that there was insufficient evidence to support his conviction of terroristic threats. See id. at 10-17. Mang acknowledges that he picked up his wife's firearm, threatened to kill himself, and made a comment that they would both be dead. Id. at 14-15. However, Mang claims that he did not point the gun at Mrs. Mang. Id. at 15. Mang also

_____

[2] Because Mang was convicted of a misdemeanor crime of domestic violence, he was also ordered to relinquish all firearms in his possession. See Order of Relinquishment, 11/5/19.

directs our attention to his wife's testimony that she "wasn't in a hurry" to leave their home, and that she was concerned that Mang would hurt himself. Id. Mang alleges that Mrs. Mang's threat to call 911 caused his "transitory anger" because, as a Pennsylvania State Trooper, "[s]uch a call could lead to serious employment consequences for [Mang]." Id.; see also id. at 16. Mang therefore argues that he "did not make his threat with deliberation and intent to terrorize his wife, but rather, he made [the threat] as a spur-of-the-moment remark resulting from anger during a heated confrontation." Id. at 17.

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Furness, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

Here, Mang was convicted of terroristic threats under section 2706(a)(1) of the Crimes Codes, which provides that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to[] ... commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). In order to convict a defendant of terroristic threats,

> the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another .... Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

Commonwealth v. Beasley, 138 A.3d 39, 46 (Pa. Super. 2016) (citations and quotation marks omitted). "Further, a defendant does not need to intend to carry out the consequence of the threat to communicate a threat." Id. at 47. "In reviewing a statement alleged to be a terroristic threat, we do not look at the statement in a vacuum. Instead, we must look at it in light of the surrounding circumstances." Commonwealth v. Anneski, 525 A.2d 373, 376 (Pa. Super. 1987).

Mang's challenge is based on only the mens rea element of this offense, i.e., his intent to terrorize his wife. In its Opinion, the trial court addressed this claim as follows:

> The present case does not involve a chance encounter in public that was followed by a heated discussion and a spur-of-the-

moment threat. Rather, the incident at issue began with a one- or two-hour long argument between a husband and wife at their home[,] [] ultimately culminat[ing] in [Mang] retrieving a loaded firearm from a nightstand and [Mang], while holding that firearm, telling his wife that they would "both be dead." [Mang] is a police officer who presumably understands the severe danger firearms present. Near the conclusion of a lengthy argument, Mrs. Mang informed [Mang] that she was going to call the police. Following this statement, [Mang] retrieved a loaded firearm from Mrs. Mang's nightstand and held it where it could be seen by Mrs. Mang. [Mang], while holding this loaded firearm, stated to Mrs. Mang that they would "both be dead." [Mang's] statement was an explicit and unmistakable threat to murder Mrs. Mang.

The evidence before the [c]ourt does not support an inference that [Mang's] threat was a spur-of-the-moment threat made out of transitory anger, but rather that it was a calculated threat designed to cause fear[,] and employed a desired purpose, namely that the police not be called. [Mang] threatened to kill his wife while holding a loaded firearm capable of carrying out that threat in seconds. This is the type of threat which seriously impairs personal security, and not a mere spur-of-the-moment threat which resulted from [transitory] anger. The totality of the circumstances in this case can justify only one interpretation of [Mang's] mens rea on the evening in question: that [Mang], in threatening to kill Mrs. Mang while holding a loaded gun, intended to cause terror in Mrs. Mang, and specifically that [Mang] intended to cause Mrs. Mang terror from fear of a fatal gunshot wound. While not an element of terroristic threats, the [c]ourt notes that Mrs. Mang's reaction to this threat, specifically running out of the house in inclement weather[,] without shoes[,] to seek the assistance of a neighbor, demonstrates that she experienced actual terror.

That [Mang] and his wife had been arguing does not establish that [Mang] lacked the requisite mens rea. "Being angry does not render a person incapable of forming the intent to terrorize." Commonwealth v. Walker, 836 A.2d 999, 1001 (Pa. Super. 2003)[] (quoting Commonwealth v. Fenton, 750 A.2d 863, 865 (Pa. Super. 2000)). [Mang] may have been angry, but the circumstances in this case display a more calculated and deliberate threat than those discussed in the cases relied upon by [Mang]. The [c]ourt finds [Mang's] argument regarding the Commonwealth's failure to establish that [Mang] pointed the gun

- 7 -

at Mrs. Mang to be completely meritless. [Mang] did not merely touch the gun[;] he made the conscious decision to retrieve the gun from Mrs. Mang's nightstand and then held it as he threatened to kill Mrs. Mang. Whether a house is "full of guns" or not, the decision to retrieve and hold a loaded gun and verbalize a threat to kill clearly displays sufficient deliberation to support a finding of intent to terrorize. The only reasonable interpretation of these circumstances is that [Mang] possessed the intent to terrorize. ...

Trial Court Opinion, 12/12/19, at 7-9 (emphasis added).

Upon review, we agree that the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to sustain Mang's conviction of terroristic threats. See Furness, supra. Based on the totality of the circumstances, the trial court, as fact-finder, could have reasonably concluded that Mang's threat was not simply the result of "transitory anger." Cf. Commonwealth v. Walls, 144 A.3d 926, 930, 936-38 (Pa. Super. 2016) (concluding that there was insufficient evidence to show that the appellant intended to terrorize, where the appellant approached and threatened an assistant district attorney who had previously prosecuted him during a brief, unplanned confrontation in a shopping mall); id. at 937 (stating that "[w]hen two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger."). Because the circumstances support the finding that Mang had intended to terrorize his wife, during a long fight, by picking up her loaded firearm and stating that he would kill them both, we cannot grant Mang relief on this claim.

In his second claim, Mang similarly asserts that the evidence was insufficient to sustain his conviction of simple assault, because he did not possess the requisite intent. Brief for Appellant at 17. Mang claims that he did not intend to place Mrs. Mang in fear of imminent bodily injury, and instead, "act[ed] out of emotion in response to the long and heated argument…." Id. at 18. Again, Mang points to Mrs. Mang's testimony that she "wasn't in a hurry" to leave their home. Id. According to Mang, he did not point the gun at his wife, advance towards her with the firearm, or chase her when she left the house. Id. at 18-19.

Mang was convicted under subsection 2701(a)(3), which provides that "a person is guilty of assault if he[] attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S.A. § 2701(a)(3). Under the Crimes Code, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. § 2301. Additionally, "[i]ntent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." Commonwealth v. Reynolds, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted).

The trial court, in concluding that the evidence was sufficient to support Mang's conviction of simple assault, relied on the same reasoning it employed in addressing Mang's first issue. See Trial Court Opinion, 12/12/19, at 9; see

also id. at 7-9. Additionally, the trial court noted, "[t]hat [Mang's] production [of the firearm] was accompanied by the circumstances presented herein, including [Mang's] repeated punching of doors and a direct threat to kill, can leave no doubt that [Mang] possessed the requisite intent to commit assault by physical menace." Id. at 9.

Upon review, we conclude that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, supports Mang's conviction of simple assault – physical menace. Specifically, the evidence supports a finding that Mang intended to place Mrs. Mang in fear of serious bodily injury by retrieving a loaded firearm and stating that they would "both be dead." See Commonwealth v. Hopkins, 747 A.2d 910, 914-15 (Pa. Super. 2000) (stating that "[t]he threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of 'serious bodily injury.' A fact[-]finder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm.") (citations omitted). Thus, we afford Mang no relief on this claim.

In his third claim, Mang contends that the verdicts were against the weight of the evidence. Brief for Appellant at 19. In support of this claim, Mang states as follows:

> How a heated argument started over [Mang], in an intoxicated condition, taking too long in a bathroom, is baffling. To find himself, in the midst of a lengthy argument over such, where he was then threatened, himself a law enforcement official, with a call to the police, clearly created a transitory state of anger. This undeniably could have lead [sic] to a mindset that was blowing off

- 10 -

steam, more than one actually intended to put his wife in fear that [Mang] would carry out his threat. At the very least, this entire set of bizarre facts clearly created a reasonable doubt as to [Mang's] state of mind.

Id. at 21.

As this Court has recognized,

[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Talbert, 129 A.3d 536, 545-46 (Pa. Super. 2015) (citation omitted). "In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Smith, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted).

We initially observe that Mang fails to support his argument with citations to the record and relevant legal authority, beyond a pro forma recitation of this Court's standard of review. See Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). Mang also provides only bald assertions that the facts of this case are "baffling" and "bizarre," but does not explain why the verdict must shock the conscience of this Court. See Smith, supra. Thus,

Mang's final claim is waived. Commonwealth v. Samuel, 102 A.3d 1001, 1005 (Pa. Super. 2014) (concluding that appellant waived his claim by failing to adequately develop his argument or provide citation to and discussion of relevant authority).

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/10/2020