J-S22034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CLINTON DESHAUN BURNS | : | |
| | : | |
| Appellant | : | No. 179 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 14, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0006181-2019

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED AUGUST 17, 2021**

Clinton Deshaun Burns (Burns) appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County (trial court) after a jury found him guilty of persons not to possess firearms and terroristic threats.[1] Counsel has filed a brief under ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and a motion to withdraw as counsel. We grant the motion to withdraw and affirm the judgment of sentence.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1) and 2706(a)(1).

**I.**

This case arose out of an incident involving Burns threatening his roommate, Kathleen Carabello (Carabello). The two were both living in a house located at 2606 North 6th Street in Harrisburg. Carabello did not know Burns before moving into the house a week before the incident.

On the night of October 15, 2018, Carabello's friend, Carly Twyman (Twyman), was staying at the house and planned to move in when she found a job. While the two were in the kitchen, Burns returned to the house and told Carabello that he did not want her living in the house anymore. After Burns left, Twyman reached into a Little Debbie snack box on top of the refrigerator and felt a handgun inside. Carabello told Twyman to leave the handgun in the box. The two then decided to go to bed early, with both going to separate bedrooms and locking their doors.

After falling asleep, Carabello woke up to the sound of Burns yelling. According to her, Burns yelled, "I want everybody to get the f___ out of my house," and "I'ma shoot everybody in this f_____ house." Burns then started banging on the bedroom doors and tried to open the door to Carabello's room. Carabello unlocked her door and opened it, hoping to calm down Burns. When she opened the door, Carabello saw Burns facing her while holding up a handgun. Burns repeated that he wanted everybody out. Carabello responded that she and Twyman would get a hotel room and move out the

next day. After Carabello said this, Burns said, "Okay, I want everybody out of my f_____ house because I'll shoot everybody in this house."

Carabello went back to her room and texted Twyman about leaving and going to the police. Carabello then walked out of her bedroom and waited for Twyman. After Twyman came out of her room, the two walked out of the house. After leaving, Carabello and Twyman called a cab and went to the police station. There, the two spoke to Officer Jacobbi Harper (Officer Harper). Carabello told him that Burns threatened her with a gun. She also gave Officer Harper a key to the house.

Along with several other officers, Officer Harper went to the house. After opening the front door, Officer Harper called out for Burns to come down to the door. Several minutes passed before Burns came down from the kitchen area and was taken into custody. Once Burns was detained, the officers entered and did a protective sweep of the house. Inside the kitchen, the officers found a Ruger 9mm handgun on the refrigerator. After photographing the handgun, the officers secured it and discovered that it was loaded. Inside the living room, meanwhile, the officers found a bag of marijuana.

At the time of the incident, Burns was on federal probation and disqualified from possessing a firearm. Additionally, the police ran a check on the Ruger 9mm and found out that it was listed as stolen. As a result, Burns was charged by criminal complaint with (1) persons not to possess firearms; (2) receiving stolen property (RSP); (3) terroristic threats; (4) simple assault;

(5) possession of a small amount of marijuana; and (6) possession of drug paraphernalia.

After the Commonwealth dismissed the RSP charge, Burns proceeded to a bifurcated jury trial on the remaining charges in October 2020. At the end of trial, the jury found him guilty of persons not to possess firearms and terroristic threats.[2] At sentencing on December 14, 2020, the trial court imposed an aggregate 8 to 16 years' imprisonment comprised of 90 to 180 months for the firearms offense and a consecutive 6 to 12 months for terroristic threats.

Burns filed a timely post-sentence motion for a new trial asserting that the jury's verdict was against the weight of the evidence. The trial court denied the motion without hearing. Burns then filed a timely notice of appeal and was ordered by the trial court to file a concise statement of errors under Pa.R.A.P. 1925. In response, counsel filed a statement of intent to file an **Anders/Santiago** brief in lieu of filing a Rule 1925(b) statement. As a result, the trial court did not file a substantive Rule 1925(a) opinion.

## II.

First, we address counsel's motion to withdraw as counsel and whether it satisfies both procedural and substantive requirements. Procedurally,

---

[2] The jury found Burns not guilty of simple assault and possession of drug paraphernalia. Based on the latter, the trial court found him not guilty of the summary marijuana charge.

counsel must: 1) petition the court for leave to withdraw, stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he has the right to retain private counsel or raise additional arguments that he deems worthy of the court's attention. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013).

Counsel has complied with the procedural requirements. In her motion to withdraw, counsel states that she has reviewed the record and concluded that the appeal is frivolous. *See* Motion to Withdraw as Counsel, 5/28/21, at 2. Counsel also certifies that she sent a copy of the *Anders* brief and the motion to withdraw to Burns. Finally, counsel's letter advises Burns of his right to retain private counsel or raise *pro se* any additional arguments that he would want this Court to consider. *See* Letter from Jacqulyn R. Gagliardi, Esq. to Burns.

Turning to the substantive elements, the brief accompanying counsel's motion to withdraw must: 1) summarize the procedural history and facts of record; 2) refer to anything in the record that counsel believes arguably supports the appeal; 3) set forth counsel's conclusion that the appeal is frivolous; and 4) state counsel's reasons for concluding that the appeal is frivolous. *See Santiago*, *supra* at 361. Counsel's *Anders* brief summarizes the factual and procedural history of this case, identifies potential issues, and

- 5 -

explains the basis for her conclusion that an appeal would be frivolous. Because counsel has complied with these requirements, we "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 355 n.5.

## III.

The ***Anders*** brief identifies three issues arguably supporting an appeal: (1) a sufficiency claim for persons not to possess firearms; (2) a sufficiency claim for terroristic threats; and (3) an excessive sentence claim.

We first address the sufficiency of evidence claims.[3] To support a conviction for persons not to possess firearms, the Commonwealth must prove

_____

[3] Our standard of review for sufficiency claims is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

that the defendant was convicted of an offense enumerated under subsection (b) of the statute, and possessed, used, controlled, sold, transferred or manufactured or obtained a license to use, control, sell, transfer or manufacture a firearm. *See* 18 Pa.C.S. § 6105(a)(1).

Here, Carabello saw Burns possess the gun, as she testified that she "opened my bedroom door and he's standing there with his gun and I'm trying to calm him down." N.T., 10/21/20, at 42. She repeated the same when asked what she saw when she opened her bedroom door, testifying that she saw that Burns "was holding his gun up." *Id*. at 43. After the jury found that Burns possessed a firearm, counsel stipulated to the admission of a self-authenticating document showing that he had been convicted of a felony offense in 2004 that disqualified him from possessing a firearm. *See* N.T., 10/22/20, at 77. Viewed in the light most favorable to the Commonwealth as the verdict winner, we find that there was sufficient evidence for the jury to convict for persons not to possess firearms, as Carabello's eyewitness testimony to seeing Burns with the gun was enough to prove possession.

To convict Burns of terroristic threats, the Commonwealth had to prove that he made: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize. *See* 18 Pa.C.S.

---

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

§ 2706(a)(1); **Commonwealth v. Walls**, 144 A.3d 926, 936 (Pa. Super. 2016). "The purpose of section 2706 is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." **Id.** (citing 18 Pa.C.S. § 2706 cmt.). The central inquiry is whether the totality of the circumstances establishes the required *mens rea*, not whether the statements were made in the context of a heated discussion. **Id.** A person can be angry and still form the intent to terrorize. **Id.**

First, the Commonwealth proved that Burns made a threat to commit a crime of violence, as Carabello testified that Burns said, "I'ma shoot everybody in this f_____ house." N.T., 10/21/20, at 48. Then, after she opened her bedroom door and tried to calm him down, Burns said, "I want everybody out of my f_____ house because I'll shoot everybody in this house." **Id**. at 51. Likewise, Twyman testified that she heard Burns say that "he was going to shoot up the place." **Id**. at 75.

Second, the Commonwealth presented sufficient evidence that Burns communicated the threat with the intent to terrorize. Carabello testified that Burns yelled the threats while holding a loaded handgun. Moreover, the threats terrorized Carabello and Twyman. Officer Harper testified that Carabello was a "wreck" when she arrived at the police station, as she was crying and having trouble trying to speak. **See** N.T., 10/21/20, at 93.

Similarly, Twyman testified that she felt like "she was going to die" when she heard Burns yell the threats. *Id*. at 77. Under the totality of the circumstances, the Commonwealth established that Burns had the requisite *mens rea* when he made the threats. As a result, there was sufficient evidence to convict for terroristic threats.

Next, we find that any excessive claim would be frivolous. Because such a claim would implicate the discretionary aspects of sentencing, Burns does not have an automatic right to appellate review. Instead, to invoke this Court's jurisdiction, we must consider: "(1) whether the appeal is timely; (2) whether [the] Appellant preserved his issue; (3) whether [the] Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code." *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013) (citation omitted). "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Cartrette*, 83 A.3d at 1042 (citation omitted).

While Burns filed a counseled post-sentence motion, that motion did not challenge the discretionary aspects of his sentence. Thus, the issue is waived. *See Cartrette*, *supra*.

Even if he had preserved such a challenge, we would find no relief warranted, as the trial court did not abuse its discretion in imposing an aggregate sentence of 8 to 16 years' imprisonment.[4] As counsel explains in the **Anders** brief, the trial court imposed standard range guideline sentences for both convictions. "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the [s]entencing [c]ode." **Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010).

Moreover, "imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court." **Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2013) (citation omitted). Here, we find no abuse of discretion by the trial court for imposing consecutive standard range guideline sentences, as one was premised on the status of Burns as a person disqualified from possessing firearms because of a prior conviction,

---

[4] Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Lekka**, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted).

while the other involved the distinct offense of making a threat with an intent to terrorize Carabello and Twyman, which it accomplished.

Finally, the trial court gave ample reasons for its sentence in response to Burns requesting a lenient sentence.

> THE DEFENDANT:  I'd just like to say at this stage of my life, at 39 years old, that this is very unfortunate.  I'm not 18, 21 years old anymore.  Five to ten or anything else -- anything really is like really, you know, acceptable for me to be doing, especially with two minor kids.  And I just hope that you understand that regardless how I cut it, I got to see the facts.  Three years.  Just take that into consideration in sentencing.  That will be all.

> THE COURT:  Well, everything you say is actually true.  You're beyond the years of impetuous behavior.  You've had a history that has garnered you not only state but federal incarceration.  So when you look at the types of involvement that preceded this matter, I mean, you should have known better.  It really depreciates the value of the incidents here, not only with the firearm prohibited from being possessed by you but then you brandished it in a manner making the threats that you made.  I think it was clear to this Court as well as to the jurors that the testimony that was given by your accusers, by the victims, created a fear that was more than just a casual offensive use of language to insight them or to put them in minor fear.  I think this was an extremely stressful situation that existed that compounds just the prohibited possession of a firearm.  It wasn't just a firearm that was found on you, it was brandished and in a manner in which the other charge of terroristic threats came about.

N.T., 12/14/20, at 3-4.

Thus, we find that the trial court did not abuse its discretion in imposing an aggregate sentence of 8 to 16 years' imprisonment.  Additionally, we find no other non-frivolous issues that would merit relief.

Judgment of sentence affirmed.  Counsel's motion to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/17/2021